## GREELEY v. THE IOWA STATE INSURANCE Co.

1. **Insurance:** FAILURE TO PAY ASSESSMENT. A policy of insurance provided that the insured should pay such sums as might be assessed by the directors of the company, and that upon failure to pay an assessment, after notice duly given, the directors might annul the policy. Notice of an assessment was mailed to plaintiff, who at that time was out of the country. Upon receipt of notice, however, plaintiff forwarded the amount, but the company refused to receive it, the policy having been previously annulled: *Held*, that upon the loss of the property by fire plaintiff could not recover.

*Appeal from Chickasaw Circuit Court.*

MONDAY, DECEMBER 9.

THIS is an action upon an insurance policy executed by the defendant to the plaintiff for the recovery of loss sustained by the burning of the insured property. The cause was tried by the court. Judgment was rendered for plaintiff for two thousand three hundred and six dollars and ninety-six cents. The defendant appeals.

*Craig & Collier,* for appellant.

*Lawrence & Perrin* and *L. L. Ainsworth,* for appellee.

DAY, J.—The defendant issued to plaintiff a policy of insurance, of which the material portion is as follows: "That, whereas, Helen R. Greeley, of Nashua, has become a member of Iowa State Insurance Company, and bound and obligated herself to pay all such sums of money as may be assessed by the directors thereof pursuant to the charter of said company, and also secured to said company the sum of three hundred and seventy-five dollars, being the amount of her deposit or premium for insuring the sum of twenty-five hundred dollars against loss or damage by fire or lightning, unto her, on the following property,   \*   \*   \*   \* during the term of six years commencing at noon on the 6th day of December, 1874, and ending at noon on the same day of the month, 1880: Now, be it known that we, members of the said company, for and in consideration of the premises, do hereby certify that the said Helen R. Greeley is insured in and by the company aforesaid, upon the property aforesaid, in the sum of twenty-five hundred dollars, and we do, therefore, promise, according to the provisions of said charter, to pay the said sum insured within three months next after the said loss shall have been proven.   \*   \*   \*   \*   \*   \*   \*

*Marginal note:* 1. INSURANCE: failure to pay assessment.

The conditions of insurance, the charter and by-laws annexed, and application, form a part of this policy."

The articles of incorporation are indorsed upon the policy, and the following are the provisions material to this controversy:

"Section 6. The amount and rates of insurance shall be, from time to time, fixed and regulated by the board of directors, and premium notes thereof may be received from the insured, which shall be paid at such time or times, and in such sum or sums, as the company shall from time to time require for the payment of expenses and losses.

"Section 15. The directors shall, after receiving notice of any loss or damage by fire sustained by any member or other person insured, and ascertaining the same, or after the rendition of any judgment as aforesaid against said company for loss or damage, settle or determine the sums to be paid by the several members thereof, as their respective proportion of such loss, and notify them in such manner as they shall see fit, or as the by-laws prescribe, and the sum to be paid by each member shall always be in proportion to the original amount of his, her or their premium note, and shall be paid to the treasurer within thirty days after such notice; and if any member shall, for thirty days after such notice, neglect or refuse to pay the sum assessed to him, her or them, as aforesaid, the directors may sue for and recover the whole amount of said premium note or notes, and at their option annul the policy of insurance, and the money thus collected shall remain in the treasury of said company, subject to the payment of such losses and expenses as have or may thereafter accrue, and the balance, if any remain, shall be returned to the party from whom it was collected, on demand, after thirty days from the expiration of the term for which such insurance was made."

On the 1st of September, 1876, the board of directors of defendant resolved that, for the purpose of paying losses and expenses of the company for the year ending at that date, an

assessment of twelve per cent be ordered on premium notes dated prior to September 1, 1875, and of ten per cent on all premium notes dated since September 1, 1875, and that the assessment thus ordered be made payable on or before the 10th day of October, 1876, at 12 o'clock M., at the office of the company in Keokuk. A notice, dated at Keokuk, September 1, 1876, signed by Howard Tucker, and adressed to Mrs. Helen R. Greeley, was sent by mail to plaintiff at Nashua, her place of residence, sometime from the 1st to the 3d of ·September, and in due course of mail should have reached there in two days. The notice is as follows: "You are hereby notified that, for the purpose of paying losses and expenses of the company for the year ending this date, an assessment of twelve per cent. on all policies issued prior to September 1, 1875, has this day been ordered by the board of directors of this company, payable on or before the 10th day of October, 1876, at the office of the company in the city of Keokuk, Lee county, Iowa. Amount due on premium note, No. 8134, is forty-five dollars. · Remit by draft, post-office order, or express, without expense to the company. The number of your policy is 8134, which you must not fail to mention when [you] remit the amount of your assessment."

On the 10th day of October, 1876, the plaintiff having made default in the payment of her assessment, the board of directors adopted the following resolution:

"That·upon all policies on which the assessment of the 1st day of September, 1876, remaining due at this date, to-wit: October 10, 1876, the party so in default shall be excluded and debarred, and shall lose all benefit and advantage of his, her or their insurance or insurances, respectively, for and during the term of such default or non-payment, and notwithstanding shall be liable and obliged to pay all assessments that shall be made during the continuance of his, her or their policies of insurance, in accordance with the articles of incorporation."

On the 6th or 7th of August, 1876, the plaintiff, accom-

panied by her husband, who acted as her general business agent, left their home in Nashua to attend the centennial exposition at Philadelphia. They remained at Philadelphia until the 15th or 20th of August, went thence to Nashua, New Hampshire, and Boston, and sailed thence to Liverpool, England. The plaintiff's husband constituted F. R. Shope his agent, at Nashua, Iowa, directed him to open all mail received after the 20th of August, to pay taxes and this insurance, and to transact all business that came by mail, or otherwise, to himself or plaintiff. Shope directed the postmaster to put in his box letters directed to plaintiff or her husband.

The notice of assessment issued by defendant was not received at Nashua by Shope, but was forwarded to plaintiff, and received in London on the 1st day of October, 1876. On the 6th of October, 1876, the plaintiff's husband sent from London to A. G. Case, of Charles City, a check for forty-five dollars, and directed him to send the money to Howard Tucker, secretary of the Iowa State Insurance Company. On the 13th day of October the property insured was destroyed by fire. On the 22d or 23d of October Case received the check, and on the 24th he sent defendant, by draft, forty-five dollars. On the 26th the draft was returned, with the statement that on the 10th of October the policy was annulled for non-payment of assessment, and the money could not be received after the insured property had been destroyed.

From the facts disclosed we think the plaintiff cannot recover. The articles of incorporation, indorsed upon and made part of the policy, provide that the directors shall determine the sums to be paid by the several members of the company to adjust losses sustained or expenses incurred, and notify them in such manner as they shall see fit, or as the by-laws prescribe. Section 2, article 2 of the by-laws provides: "Whenever any assessment shall have been declared by the company, and notice thereof forwarded to the insured, by mail or otherwise, and the insured shall, for the space of thirty days after such notice, refuse or neglect to pay the same,

Greeley v. The Iowa State Insurance Co.

the directors may sue for and recover the whole amount of said premium note or notes, and at their option annul the policy of insurance."

Notice of the assessment was given by mail, as this by-law provides, as early as the 3d day of September, and, in contemplation of law, the plaintiff had notice when in the ordinary course of mail the notice should have reached Nashua. It would greatly embarrass the defendant, if not render the transaction of its business impracticable, if it should be required to prove actual delivery of notice to the party assessed. Besides, the by-laws are made a part of the policy, and become a part of the contract entered into between the parties. By express stipulation it is agreed that the policy may be forfeited for refusal or neglect to pay an assessment within thirty days after notice thereof forwarded to the insured by mail. The company did all it was required to do. That the notice was not received by plaintiff was her misfortune and not the defendant's fault. By this failure the defendant was prevented from receiving the assessment upon the premium note, and, under the policy, the charter and the by-laws, acquired the right to debar the plaintiff, as it did, of all benefit and advantage under the insurance during the period of default. *Coles v. Iowa State Mutual Insurance Company*, 18 Iowa, 425. See *Lathrop v. Greenfield Stock & Mutual Fire Insurance Company*, 2 Allen, 82. Appellee urges that plaintiff did not refuse to pay, and, as she was not negligent in the premises, she did not neglect to pay. We are satisfied, however, that to fail to pay is to neglect to pay.

The judgment is                                 REVERSED.